**Harry W. BRINK, Plaintiff,**

v.

**FIRST CREDIT RESOURCES,
Defendant.**

No. Civ 97–1261–PHX–ROS.

United States District Court,
D. Arizona,
Phoenix Division.

Feb. 12, 1999.

Michael Carey Shaw, O. Randolph Bragg, Floyd Bybee, Law Offices of Bybee & Shaw, Tempe, AZ, for Harry W. Brink, on behalf of himself and all others similarly situated, plaintiff.

Robert E. Boyle, Robert E. Boyle & Associates PA, Bloomington, MN, for First Credit Resources.

## ORDER

SILVER, District Judge.

Before the Court is Plaintiff Harry W. Brink's Motion for Class Certification.

## I. Background

For purposes of evaluating a motion for class certification, the allegations contained in Plaintiff's complaint are assumed to be true. *See Mateo v. The M/S Kiso*, 805 F.Supp. 761, 771 (N.D.Cal.1991). The allegations relevant to the motion are as follows. By mailing on April 29, 1997, Defendant First Credit Resources informed Plaintiff that it had purchased his outstanding debt in the amount of $2,294.44. The mailing continues:

> You are approved for a Bank of Hoven Visa or MasterCard Credit Card. This will give you an opportunity to resolve this debt with small monthly payments and re-establish your good credit at the same time. To review your account and find out how you can receive your pre-approved Bank of Hoven Visa or MasterCard Credit Card call toll free 1–800–374–7754 today.

The following statements appear in bold on the front of the envelope containing the mailing: "Your *Pre–Approved* Visa or Master-Card Certificate is Enclosed!"; "No Finance Charge for the first 90 days on Purchases"; and "Low Monthly Payments."

The credit card limit on the Bank of Hoven Visa or MasterCard is the amount of Plaintiff's alleged debt. Plaintiff's debt is time-barred by the statute of limitations, but the credit card is available only to consumers who reaffirm their otherwise time-barred debt.

Plaintiff brought the instant action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff alleges: 1) Defendant used false representations or deceptive means to collect or attempt to collect a debt; 2) Defendant improperly attempted to collect a time-barred debt; 3) the mailing constitutes a false representation; and 4) the mailing fails to provide the required debt collection warning. Plaintiff seeks declaratory relief, actual damages, statutory damages, and costs and attorneys' fees. He also seeks actual damages on behalf of those proposed class members who sustained such damages.

## II. Discussion

In the Complaint, Plaintiff states that the action is brought on behalf of a class consisting of "all persons with addresses in Arizona to whom First Credit Resources sent 'Pre–Approved Visa or MasterCard Certificates' [of the type described above] ... in connection with attempts to collect debts...." (Complaint, ¶ 17). The proposed class is further limited to those persons to whom Defendant sent the Certificates during "one year prior to the date of filing this action," and whose "letters were not returned as undelivered by the Post Office." However, in the Motion for Class Certification, Plaintiff asks the Court to certify a class consisting of "all persons with addresses in the United States" who received the certificates. The Court will determine whether a class should be certified, and, if so, whether the scope of the class should include individuals with addresses in Arizona only or the entire United States.

■ Class certification is governed by Federal Rule of Civil Procedure 23. Plaintiff, the proponent of the class, bears the burden of establishing that the prerequisites set forth in the Rule are satisfied. *O'Connor v. Boeing North Am., Inc.* 180 F.R.D. 359, 366 (C.D.Cal.1997); *Mateo*, 805 F.Supp. at 770. Specifically, Plaintiff must meet the four requirements set forth in subsection (a), numerosity, commonality, typicality, and adequacy, plus one of the alternative requirements set forth in subsection (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998); *O'Connor*, 180 F.R.D. at 366.

### A. Numerosity

■ Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The requirement is met if, due to class size, it would be "extremely difficult or inconvenient to join" all class members. *Hum v. Dericks*, 162 F.R.D. 628, 634 (D.Hawai'i 1995). In answers to interrogatories, Defendant explains that it sent the credit card certificate mailing to approximately 366 individuals in the state of Arizona prior to May, 1997. Following that date, Defendant sent a revised version of the certificate to approximately 29 individuals in the state of Arizona.

Defendant further explains that it sent the original version to approximately 89,613 individuals in the United States prior to May, 1997 and the revised version to approximately 142,340 individuals in the United States.

The practicability of joining these numbers of proposed class members is a fact-specific inquiry. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D.Cal.1996). Courts consider not only the number of proposed class members, but also their geographical diversity and any other factors bearing on the practicability of joinder. A class of 395 individuals with addresses in Arizona is sufficiently large to render joinder impracticable, particularly because class members are located throughout the state. *Id.* at 648. A class of over 230,000 members with addresses throughout the United States satisfies the numerosity requirement more easily due to sheer size and geographical diversity. *See id.* Plaintiffs have satisfied the numerosity requirement for either class.

**B. Commonality**

Commonality is established if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The standard is satisfied if relief is based on " questions of law applicable in the same manner to each member of the class.'" *O'Connor*, 180 F.R.D. at 371 (quoting *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982)). For example, in a groundwater contamination action, commonality existed because the relief available to each Plaintiff depended upon the common legal issue of whether Defendants' conduct regarding its Rocketdyne facility was negligent, subject to strict liability, or in violation of CERCLA. *Id.* at 371. Likewise, in the instant action, relief for each potential class plaintiff depends upon the common legal issue of whether Defendant violated one or móre sections of the FDCPA when it mailed the credit card certificate to Plaintiffs. The commonality requirement is satisfied.

Defendants argue that commonality is not satisfied because individualized issues exist regarding the proposed calls members' damages. That damages may vary is irrelevant

to the central claims forming the basis of liability. *See Smith v. University of Washington Law School*, 2 F.Supp.2d 1324, 1342 (W.D.Wash.1998). Because the central liability issues are common to the proposed class, variability of damages is not a basis for denying class certification. *See id.* (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976)); *O'Connor*, 180 F.R.D. at 371.

**C. Typicality**

The typicality prerequisite is satisfied if "the claims or defense of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality concerns the Defendant's actions toward the plaintiff class. *Smith*, 2 F.Supp.2d at 1342. A representative's claim is typical if it is based upon the same event or course of conduct that is the basis of the other class members' claims, as well as the same legal theory. *Haley*, 169 F.R.D. at 649. *See also Hodgers–Durgin v. de la Vina*, 165 F.3d 667, 678–80 (9th Cir.1999). For example, in a discrimination lawsuit typicality is satisfied if the plaintiffs allege that the defendant discriminated against the named plaintiffs and the remaining class members in the same general fashion. *Smith*, 2 F.Supp.2d at 1342. In the instant action, Plaintiff's FDCPA claims all stem from Defendant's mailing of the credit card certificate. The other proposed class members' claims are based on the same event and rely on the same legal theory; thus, Plaintiff's claims are typical.

Defendant argues that Plaintiff's claim is atypical because Plaintiff did not respond to the mailing and thus can claim only statutory, rather than actual, damages. However, disparity in damages does not generally defeat typicality. *O'Connor*, 180 F.R.D. at 372 (quoting Charles Wright, Arthur Miller, and Mary Kane, 7A *Federal Practice and Procedure* § 1764, at 235–41 (1996)). The distinction between statutory and actual damages is irrelevant. *Keele v. Wexler*, 149 F.3d 589, 593–94 (7th Cir.1998). Plaintiff's claim requires proof of the same elements pursuant to the FDCPA as do the claims of proposed

class plaintiffs who have sustained actual damages.

## D. Adequacy

■ Adequacy is shown if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement helps ensure that absent class members are vigorously represented by named class members and counsel. *Smith*, 2 F.Supp.2d at 1343. Representation is adequate if counsel for the class is competent and qualified, and the class representatives do not have interests antagonistic to or conflicting with those of the unnamed class members. *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978)); *O'Connor*, 180 F.R.D. at 375.

Defendant does not challenge the competency and qualifications of Plaintiff's counsel. Moreover, one of Plaintiff's attorneys has submitted a declaration averring that he has been involved in numerous consumer cases and his current practice consists solely of representing persons in consumer rights litigation. He has written a law review article and portions of two books on fair debt collection in addition to lecturing on the topic on many occasions. Counsel is unmistakably competent and qualified.

Defendant does not argue that Plaintiff has interests antagonistic to or in conflict with those of unnamed class members, the second portion of the Ninth Circuit's standard for establishing adequacy. With respect to this standard, the issue is whether the representatives' interests are comparable to those of unnamed class members, as in the inquiry regarding typicality. *O'Connor*, 180 F.R.D. at 375; *Haley*, 169 F.R.D. at 650. For the reasons set forth in the discussion of typicality, above, Plaintiff's interests are comparable to those of other prospective class members. The adequacy requirement is satisfied.

■ Defendant argues that Plaintiff has not demonstrated a financial ability to pay for the costs of a class action; however, a proposed class representative is not responsible for the entire costs of a class action largely benefitting strangers. *Rand v. Mon-* *santo Co.*, 926 F.2d 596, 599 (7th Cir.1991). Requiring repayment of litigation expenses by the class representative is at odds with Rule 23. *In re Oracle Securities Litigation*, 136 F.R.D. 639, 643 (N.D.Cal.1991). By declaration, Plaintiff avers his willingness to pay his *pro rata* share of litigation expenses. His financial commitment is sufficient.

■ Defendants also argue at length that Mr. Brink, the named Plaintiff, is not sufficiently familiar with either the facts or legal theories at issue in the instant action to adequately represent the class. A plaintiff need possess no more that marginal familiarity birth the facts of his case, and need not fully understand the legal theories, particularly when he or she is represented by competent counsel. *See Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 355 (N.D.Ill. 1995). In his deposition, Plaintiff confirmed receiving the mailing at issue, and explained that he considered the statements in the mailing and on the face of the envelope deceptive and certain of Defendant's acts abusive. Plaintiff is sufficiently familiar with the action.

Plaintiff has satisfied each of the four requirements imposed by Rule 23(a). Accordingly, the Court will proceed to determine whether he also has established one of the alternative requirements established by Rule 23(b), specifically those imposed by Rule 23(b)(3).

## E. Predominance and Superiority

Pursuant to Rule 23(b)(3), "Plaintiff must establish predominance, i.e., the questions of law or fact common to the members of the class predominance over any questions affecting only individual members." In addition, Plaintiff must establish superiority, i.e., "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In deciding these issues, the Court may consider matters including: "the interest of members of the class in individually controlling the prosecution or defense of separate actions: ... the desirability or undesirability of concentrating the litigation of the claims in the particular forum" and "the difficulties likely to be encountered in the man-

agement of a class action." Fed.R.Civ.P. 23(b)(3)(A), (C), (D).

The predominance requirement is much more vigorous than the commonality requirement of Rule 23(a). *O'Connor*, 180 F.R.D. at 379. Common issues predominate when they constitute such a "significant aspect of the case" that " 'there is a clear justification for handling the dispute on a [class] ... basis' " *Hanlon*, 150 F.3d at 1022 (quoting *Federal Practice & Procedure* § 1778 at 528). The inquiry is designed to determine whether a class action as far more efficient thereby promoting judicial economy. *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1232 (9th Cir.1996); *Haley*, 169 F.R.D. at 650. In the instant action, the common issues of law and fact greatly predominate. All of the proposed class members claims arise from Defendant's act of mailing the credit card certificate at issue, or an amended version thereof, to the proposed class members. Their legal theories are identical—the only individualized inquiry pertains to the calculation of damages. Due to the overwhelming predominance of the common factual and legal issues, there exists a clear justification for handling the dispute on a class basis. *See Hanlon*, 150 F.3d at 1022. Indeed courts routinely certify classes in cases such as this, in which the alleged misconduct occurs in the form of a standardized writing by a common defendant. *Mateo*, 805 F.Supp. at 773 (citing *Lerwill*, 582 F.2d 507; *Blackie*, 524 F.2d at 903).

The issues of predominance and superiority are intertwined. *O'Connor*, 180 F.R.D. at 383. The more that common issues predominate, the more likely it is that a class action is superior. *See id.* As explained above, common issues predominate to a significant degree and thus a class action is more efficient. Moreover, the alternative to a class action, individual claims, would not be economical for the potential plaintiffs. *Hanlon*, 150 F.3d at 1023. Defendant indicates, in its supplemental memorandum, that it only mailed certificates to people with outstanding balances ranging from $151 to $5,000. Although plaintiffs maintaining individual actions may request statutory damages of $1,000 plus actual damages, litigation costs

would dwarf the potential recovery that the vast majority of individuals could obtain. *See id.* For reasons of both efficiency and economy, a class action is the superior means of resolving the potential plaintiffs' claims.

Plaintiffs have satisfied all of the requirements established by Rule 23(a) and (b)(3). The Court will certify a class.

### F. Whether the Class Should Consist of Individuals With an Address in the United States, or Solely Those With an Address in the state of Arizona

To determine the appropriate size of the class, the Court begins by considering one of the factors relevant to the issue of whether a class action is superior, specifically, "the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(D). The manageability factor requires analysis of several specific matters, including potential difficulties involved in notifying class members of the suit, and in calculating and distributing damages. *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir.1990).

Distributing damages to a class consisting of individuals with an address in the United States who obtained the mailing, approximately 231,000 people, would be extremely difficult. Because the FDCPA limits the total damages a class may obtain to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector," the largest amount an individual member of a projected class of 231,000 could obtain is little more than $2.00 before costs are deducted. 15 U.S.C. § 1692k(a)(2)(B). A total recovery of 1% of the Defendant's net worth could be far less. Even if the maximum recovery is available, the costs of notifying a class this size and distributing damages to it could easily reduce the actual per member recovery to zero dollars. The cost of distribution so outweighs the potential recovery that a class action is not feasible. *See Six Mexican Workers*, 904 F.2d at 1305.

In contrast, each member of a projected Arizona class of 395 members could potentially obtain a recovery of the entire $1,000

statutory damages, plus actual losses up to a total of $105,000 for the class as a whole. Thus, it is at least conceivable that the size of the recovery would justify the cost of notifying and distributing damages to members of a class limited to individuals with an Arizona address.

Although the smaller class is likely warranted on grounds of manageability alone, a far more important factor has prompted the Court to conclude that the class should be limited to individuals with an Arizona address. According to the Seventh Circuit, it is likely that the maximum allowable damages for a class action pursuant to the FDCPA are available in each class action pertaining to particular misconduct, rather than only to an aggregate group of class actions pertaining to the misconduct. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 342–43 (7th Cir.1997). The Seventh Circuit expressly declined to decide the issue, and this Court is not prepared to resolve it without briefs. Moreover, the Court has not located one decision addressing this issue in the Ninth Circuit or any other court. Nonetheless, given the Seventh Circuit's analysis, the Court concludes that a nationwide class would be a disservice to the potential plaintiffs because the group as a whole might obtain a larger total recovery by maintaining several class actions rather than only one.

Given the potential for a larger total recovery from multiple class actions, the reason the Court has not limited the Class still further warrants discussion. Numerosity problems may arise if the potential class size is further reduced, and may result in additional problems due to losses of economy and efficiency. Moreover, class actions were not designed solely to compensate similarly situated victims of misconduct, " 'but also to deter violations of the law, especially when small individual claims are involved.' " *Gammon v. GC Svcs. Ltd. Partnership*, 162 F.R.D. 313, 321 (N.D.Ill.1995) (quoting H. Newberg, *Class Actions* § 4.36). Certifying the smaller class appropriately balances concerns about compensation with concerns about efficiency and deterrence.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Class Certification is granted. The class consists of all persons with addresses in Arizona to whom First Credit Resources sent Pre–Approved Visa or MasterCard Certificates during one year prior to the date of filing this action and whose letters were not returned as undelivered by the Post Office. (Dkt. # 12).