William M. WINKLER; Brent A. Winkler; Paul E. Berry and Nicola J. Berry, husband and wife, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

DTE, INC., an Arizona corporation, d/b/a Neon Motors; Donn W. Mueller and Tricia Mueller, husband and wife; WFS Financial, Inc., a California corporation, Defendants.

No. 00CV276–PHX–SRB.

United States District Court,
D. Arizona.

Dec. 6, 2001.

Floyd W. Bybee, Michael Carey Shaw, Shaw & Bybee Consumer Law Firm, Tempe, AZ, Bruce A. Burke, Law Office of Bruce A. Burke PC, Tucson, AZ, Hyung Sik Choi, Law Offices of Hyung S. Choi, Tempe, AZ, for plaintiffs.

David Robert Jordan, Christopher David Lonn, Titus Brueckner & Berry PC, Scottsdale, AZ, for defendants Don and Tricia Mueller, DTE, Inc.

Mark S. Sifferman, Norling Kolsrud Sifferman & Davis PLC, Phoenix, AZ, Mark D. Lonergan, Hoan V. Vo, John B. Sullivan, Severson & Werson, San Francisco, CA, for defendant WFS Financial.

### ORDER

BOLTON, District Judge.

This matter comes before the court on the Plaintiffs' Motion to Certify two main classes, each with one subclass, to be represented by the four individual Plaintiffs named above. (Doc. 82). The Plaintiffs assert that the proposed classes and subclasses meet all the requirements for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. In connection with the exhibits provided by the Plaintiffs to support their Motion to Certify and in response to objections raised by Defendant WFS, the Plaintiffs also request an evidentiary hearing to lay the foundation for the exhibits provided to the court. (Doc. 103–1).

## I. BACKGROUND

Defendant DTE, Inc., d/b/a Neon Motors (Neon Motors), is a used car dealership located in Scottsdale, Arizona and owned by Defendants Donn and Tricia Mueller. From 1994 until 1999, Neon Motors sold used suburbans and pickup trucks to each member of the proposed class. Upon purchase of a vehicle from Neon Motors, each named Plaintiff and each member of the proposed class signed a standard form known as the secure odometer disclosure form which indicated the mileage reading on the odometer of the purchased car. On the secure odometer disclosure form, Neon Motors routinely marked the box next to the statement: "NOT Actual Mileage, WARNING–ODOMETER DISCREPANCY." Each Plaintiff also signed purchase contracts which included terms regarding financing for the vehicles and a section entitled "Amounts Paid to Others on Your Behalf Includes: a. Payments to Public Officials for Official Fees."

The Plaintiffs assert that Neon Motors purchased used vehicles, tampered with the odometers to roll back the mileage on these vehicles after acquisition and prior to re-sale, and then sold these vehicles to Plaintiffs and to members of the proposed class with false odometer disclosure statements. In addition, the Plaintiffs contend that Neon Motors routinely overcharged, but failed to refund, its customers for amounts charged as "Payments to Public Officials for Official Fees." Neon Motors allegedly incorporated the amount overcharged for official fees into the cash sale price of the vehicles it sold and then financed these overcharges. The Plaintiffs allege that a major lender that provided financing for many of the vehicles sold by Neon Motors was Defendant WFS Financial (WFS).

The Plaintiffs argue that WFS is also liable for claims against Neon Motors pursuant to the following clause of the financing agreement: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

The Plaintiffs seek actual and statutory damages, plus reasonable attorneys' fees and costs, against the Defendants under the following theories: 1) violation of the Federal Motor Vehicle Information and Costs Savings Act, 49 U.S.C. § 32701 *et seq.* (1994) (Odometer Act); 2) state law breach of contract; and 3) state law conversion. The named Plaintiffs also seek damages on an individual basis under the Arizona Consumer Fraud Act, A.R.S. §§ 44–1521 *et seq.* (West 1995), and represent that they will not pursue this fourth theory on behalf of the class in light of "the difficulty of certifying a class claim containing a reliance element, and the adequacy of remedies set forth in the Federal Odometer Act."

The Plaintiffs defined two classes and two subclasses in its Motion to Certify Class, but in response to concerns raised in the Defendants' Response, the Plaintiffs revised their proposals and presented the following classes and subclasses:

Class A: All persons who purchased a used vehicle from Neon Motors with a certificate of title which disclosed odometer mileage that was lower than the odometer mileage on that vehicle's certificate of title when Neon Motors acquired it.

Subclass A: All persons who purchased a used vehicle from Neon Motors which was financed by WFS Financial, with a certificate of title which disclosed odometer mileage that was lower than the odometer mileage on that vehicle's certificate of title when Neon Motors acquired it.

Class B: All persons who purchased a vehicle from Neon Motors, who were overcharged by Neon Motors for "Payment to Public Officials for Official Fees" and who did not receive a refund for the overpayment from Neon Motors.

Subclass B: All persons who purchased a vehicle from Neon Motors which was financed by WFS Financial, [who] were overcharged by Neon Motors for "Payment to Public Officials for Official Fees" and who did not receive a refund for the overpayment from Neon Motors.

Regarding Class B and Subclass B, the Plaintiffs define an "overcharge" as a charge

which occurs when an "official fee" amount stated in the vehicle's purchase documents is greater than the "official fee" amount which that vehicle's transaction documents indicate Neon Motors actually paid as an official fee to a public official.

## II. LEGAL STANDARDS AND ANALYSIS

■■■■ The requirements for class certification are set forth in Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) establishes the threshold requirements for proper certification of a class action: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed.R.Civ.P. 23(a). In addition to the four threshold requirements, a proposed class must qualify under one of the three categories listed in section (b) of Rule 23. The Plaintiffs contend that the proposed class satisfies the conditions of Rule 23(b)(3), which contains two additional elements: (1) predominance of common issues and (2) superiority of the class action device. *See* Fed. R. Civ. Proc. 23(b)(3). Rule 23(b)(3) also provides a list of factors to consider in the determination of whether the proposed class can be maintained as a(b)(3) class. These factors include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

*Id.* The party seeking class certification bears the burden of demonstrating that she has met the requirements of Rule 23. *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). However, in a motion for class certification, the plaintiff need not prove and the court will not consider whether the plaintiff will prevail on the merits. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94

S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). The trial court has broad discretion to certify a class action but must conduct a "rigorous analysis" of whether the Rule 23 requirements have been met. *Zinser*, 253 F.3d at 1186. The trial court also retains the authority to amend the certification order or to decertify the class in light of subsequent developments in the litigation. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *see* Fed.R.Civ.P. 23(c)(1) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.").

The Defendants argue that the Plaintiffs have failed to meet all the criteria required under Rule 23. Specifically, the Defendants contend that the Plaintiffs' definitions of the classes and subclasses are deficient, that the Plaintiffs have failed to prove that joinder of the plaintiffs would be impracticable, that the claims of the proposed class are not sufficiently common because each transaction was unique, that the Plaintiffs have failed to show that all members of the proposed class seek the same remedy, that conflicts of interest exist between the named Plaintiffs and the unnamed class members, that individual issues of liability and damages predominate over common issues, and that class action treatment of this case is not superior to individual actions.

Regarding the Defendants' initial argument that the Plaintiffs' class definitions were deficient, the court finds that the revised class definitions provided by the Plaintiffs are sufficiently definite and ascertainable such that class members can be accurately identified. The court proceeds to consider the Rule 23 requirements.

### A. Numerosity

■■■ To establish numerosity, the Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). In determining whether the proposed class is sufficiently numerous to sustain a class action, the court

must examine the specific facts of the case because the numerosity requirement "imposes no absolute limitations." *Gen. Tel. Co. of the Northwest v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). The party seeking certification need not provide an exact enumeration of the class members. *Weinberger v. Thornton*, 114 F.R.D. 599, 602, n. 1 (S.D.Cal.1986). Rather, a "reasonable estimate of the number of purported class members satisfies the numerosity requirement." *In re Badger Mountain Irrigation Dist. Sec. Litigation*, 143 F.R.D. 693, 696 (W.D.Wash.1992).

■ In the present case, the Plaintiffs present evidence from the Motor Vehicle Department (MVD) which supports the Plaintiffs' allegation of 163 instances in which the odometer mileage at the time that Neon Motors purchased a vehicle was higher than the displayed mileage at the time that Neon Motors sold that vehicle. In addition, the Plaintiffs allege that through discovery, they have identified at least 63 additional cases of odometers which were rolled back while in Neon's possession. The Plaintiffs further present evidence showing that out of the 226 instances of odometer rollbacks identified thus far, 66 of those sales contracts were assigned to WFS. Regarding the class consisting of customers who were overcharged for "official fees," the Plaintiffs have proffered a summary of information from the MVD database which demonstrates that Neon Motors collected more in "official fees" from 87 customers than Neon Motors paid in "official fees."

The Defendants imply that because all the potential class members purchased their vehicles from Neon Motors in Scottsdale, Arizona, the geographical diversity of the class members is limited, and therefore, it would not be impracticable to join all members of the potential class in a single lawsuit. However, even if all of the class members resided near Scottsdale, Arizona, the procedure for joinder of all of the members of a class of this size would be inefficient and costly. Because the significant number of plaintiffs within the class would make joinder impracticable, the court finds that the Plaintiffs have met the numerosity requirement.

### B. Commonality

■ The commonality requirement is met if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This standard is satisfied if the moving party shows that there are " 'questions of law applicable in the same manner to each member of the class.' " *Brink v. First Credit Resources*, 185 F.R.D. 567, 570 (D.Ariz.1999) (quoting *O'Connor v. Boeing North Am., Inc.*, 180 F.R.D. 359, 371 (C.D.Cal.1997)). The standard for commonality is minimal because "all that is required is a common issue of law or fact." *Blackie v. Barrack*, 524 F.2d 891, 904 (9th Cir.1975).

■ In the instant action, the Plaintiffs have requested certification for their Odometer Act, breach of contract, and conversion claims. The Plaintiffs base their claims under the Odometer Act on allegations that Neon Motors engaged in a common course of conduct in tampering with the odometers on the vehicles it sold with an intent to defraud its customers. The Plaintiffs contend that they will prove that Neon Motors rolled back odometers on approximately 300 vehicles. Proof of a common course of conduct and an intent to defraud are factual issues common to all members of the proposed class. Moreover, the proposed class members are united by a common legal issue regarding whether Neon's disclosures on the secure odometer statement fulfilled the requirements of the Odometer Act. The Plaintiffs' breach of contract claim also presents a common issue because it requires an interpretation of the terms in the standard sales contract executed by Neon Motors and each class member. Regarding the Plaintiffs' conversion claim, the common issues include whether the Defendants' payment of a lower amount for official fees than was charged to the customer according to the sales contract constitutes illegal conversion. Based on the common issues contained in each of the three claims brought on behalf of the class, the court finds that the Plaintiffs have satisfied the commonality requirement.

### C. Typicality

■ Typicality is established when "the claims or defenses of the representative are

typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). In assessing typicality, the court considers "the nature of the claim or defense of the class representative, and not ... the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Specifically, a claim is typical if it is based on the same event or course of conduct giving rise to the claims of other class members and based on the same legal theory. *Brink*, 185 F.R.D. at 570 (citing *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D.Cal.1996)).

▪ In the present case, the Plaintiffs allege that the Defendants treated each class member similarly by intentionally tampering with the odometers, providing false disclosures of odometer readings, and overcharging its customers for official fees. Additionally, the Plaintiffs have presented evidence showing that Neon Motors used a standard contract of sale, a standard contract of assignment to WFS, and the same secure odometer disclosure form, all of which support the existence of a common course of conduct. The Defendants do not deny that they used standard contracts and the standard secure odometer disclosure form. The three claims typical to the class are based on the same course of conduct and the same legal theories.

▪ The Defendants argue that the named Plaintiffs are not typical because they are not aware of the individual circumstances of each of the proposed class members and because they are not familiar with the remedies desired by each class member. However, the named representatives need not have direct knowledge of each class member's factual circumstances and litigation preferences. *See Brink*, 185 F.R.D. at 571 ("A plaintiff need possess no more than marginal familiarity with the facts of his case, and need not fully understand the legal theories, particularly when he or she is represented by competent counsel."). If the legal claims and defenses of the named representatives are typical of the claims and defenses of the class, the typicality requirement is satisfied.

▪ The Defendants also contend that the named Plaintiffs fail to satisfy typicality because they seek to certify a class for only three of the claims alleged and are pursuing the Arizona Consumer Fraud Act claim on an individual basis. The existence of a claim in addition to the claims pursued on a classwide basis does not defeat a finding of typicality. The three claims on which the Plaintiffs seek certification are common to all class members and present sufficient typicality to meet the typicality requirement.

▪ Defendant WFS argues that it has valid defenses and counterclaims it may assert against some class members but not the named representatives. WFS represents that some class members have defaulted on their payment obligations to WFS, have been sued by WFS for money owed on their contracts, have entered into agreements which supersede their purchase contracts, or may be estopped from pursuing claims against WFS in this forum because they have filed for bankruptcy and have listed their claims against WFS as assets of their estates. However, there is no evidence in the record demonstrating that any separate defenses and counterclaims will actually apply to any absent class members. In support of its argument that individual defenses and counterclaims exist, WFS relies solely on the Declaration of Paul Goin, the Region Business Center Manager, Assistant Vice–President for WFS. In his declaration, Mr. Goin states:

3. WFS purchases and accepts assignment of numerous vehicle sale contracts throughout the state of Arizona. These purchases and assignments are made from new and use[d] motor vehicle dealers, including Neon Motors ("Neon").

4. Defaults and bankruptcies contribute to the losses WFS incur[s] on some of its thousands of accounts. Of the accounts where the customer defaulted, WFS has sued some in order to repossess their vehicle and/or recover monies owing. Of the accounts where the customer files for bankruptcy protection during or after their contract terms, some may list any claims against WFS as assets of the bankruptcy estate.

5. WFS may enter into oral or written subsequent and superseding agreements with defaulting customers whereby WFS may compromise the amounts due.

The general information provided by Mr. Goin fails to identify any members of the proposed class who may be subject to the described defenses and counterclaims and is insufficient to overshadow the fact that the class's claims are based on a common course of conduct and common legal theories. Moreover, the consideration of counterclaims against individual class members may be more appropriately handled after liability has been determined. *See Allapattah Servs., Inc. v. Exxon Corp.*, 157 F.Supp.2d 1291, 1323 (S.D.Fla.2001) ("[T]he appropriate time to assert counterclaims against individual class members is during the damage phase of the case."); *Donson Stores, Inc. v. Am. Bakeries Co.*, 58 F.R.D. 485, 489–90 (S.D.N.Y. 1973) ("It is the intention of the Court to try the issue of defendants' liability to the named plaintiffs first. If liability is established, other issues, including damages and counterclaims, can be handled on a class member-by-class member basis.") Because the class is subject to substantially similar claims and defenses, the court finds that the Plaintiffs have satisfied their burden of showing their typicality with respect to Defendant WFS.

### D. Adequacy of Representation

■ The named plaintiff must also prove that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Adequacy of representation is satisfied if the named representatives appear "able to prosecute the action vigorously through qualified counsel" and if the representatives have no "antagonistic or conflicting interests with the unnamed members of the class." *Lerwill*, 582 F.2d at 512. Regarding potential conflicts, "courts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart

of the suit." *Blackie*, 524 F.2d at 909. The Defendants have not raised an objection based on the qualifications of the Plaintiffs' counsel, so the court presumes that the Plaintiffs' counsel is sufficiently qualified to meet the adequacy of representation requirement.

■ The Defendants, however, contend that the named Plaintiffs' prosecution of the consumer fraud claim in their individual capacities raises an interest antagonistic to the class members because the named Plaintiffs have an incentive to litigate their consumer fraud claim with the most effort. The Defendants' argument that the court should certify none of the claims because the class representatives have failed to request certification on all claims is ironic. The pursuit of an additional claim does not raise an apparent and imminent conflict of interest which resides at the very heart of the lawsuit. The claim under the Arizona Consumer Fraud Act is closely related to the three class claims but requires proof of individual reliance,[1] creating the need for consideration of a greater number of individual issues not common to all class members. Thus, the consumer fraud claim is less manageable as a class action claim, and the Plaintiffs properly sought class certification only on claims for which class treatment is most appropriate. The claims pursued by the named representatives are sufficiently coextensive with the claims pursued on behalf of the class to provide sufficient assurance that the named Plaintiffs will adequately represent the class. Thus, the court finds that the adequacy of representation requirement is satisfied. If evidence of a conflict of interest arises, the court retains the authority to modify the order certifying the class.

The court finds that the elements of Rule 23(a) have been fulfilled. To qualify for class action treatment, the Plaintiffs must also satisfy one of the criteria under Rule 23(b). The Plaintiffs in the present case have invoked Rule 23(b)(3).

---

1. Under Arizona law, plaintiffs may not recover under the Arizona Consumer Fraud Act "unless they prove that they relied on the defendant's unlawful practice and were damaged thereby."

*State of Arizona v. Hameroff*, 180 Ariz. 380, 884 P.2d 266, 269 n. 1 (1994) (citing *Peery v. Hansen*, 120 Ariz. 266, 585 P.2d 574, 577 (1978)).

### E. Predominance of Common Questions

Although the court has found that common questions of law and fact exist, the Plaintiffs must go further and show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R.Civ.P. 23(b)(3). The predominance inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). In the present case, the significant common issues include whether the secure odometer disclosure form provided by Neon Motors violated the Odometer Act, whether Neon Motors tampered with the odometers, whether the Defendants acted with an intent to defraud, and whether the alleged overcharge of official fees violated the terms of the standard purchase contract or constituted the tort of conversion.

■ The Defendants, however, argue that substantial individual issues must be examined and that these individual issues predominate over the common issues in this litigation. Specifically, the Defendants contend that the transactions between the individual plaintiffs and Neon Motors were unique in terms of the representations made, identity of the salesperson, timing, financing needs, and contract terms written and/or typed in by Neon Motors. The factual differences identified by the Defendants, however, have minimal relevance to the ultimate decisions regarding liability. The liability inquiry under the Odometer Act centers on the information provided by Neon Motors on the secure odometer disclosure form and not any other aspects of the purchase transactions. The Defendants admit that all buyers were informed of the odometer status of their vehicle through the standard secure odometer disclosure statement. Additionally, the evidence shows that Neon Motors frequently issued secure odometer disclosure forms which indicated: "NOT Actual Mileage, WARNING–ODOMETER DISCREPANCY." The individual factual circumstances surrounding each purchase transaction will not alter the determination of whether the mileage disclosures provided by Neon Motors complied with the disclosure requirements of the Odometer Act. The class members are united by the standardized form used to convey the alleged misrepresentations. Similarly, the factual differences in the purchase transactions will not affect the consideration of whether the Defendants tampered with the odometers in order to roll back the mileage or whether the Defendants acted with an intent to defraud.

■ Regarding the breach of contract claims, the inquiry will focus on the interpretation of the terms of the purchase contract. The Plaintiffs have presented evidence showing that a standard purchase contract was used by Neon Motors which contained spaces to fill in the type of vehicle sold, the amounts related to financing the vehicle, and the amounts paid on the purchaser's behalf to others, including the amounts for official registration fees. Although certain portions of this standard contract required Neon Motors to fill in individual details and amounts, the information filling the spaces did not change the substantive terms of the contract. The differences in the type of vehicles sold and the amounts for financing and fees will affect any ultimate computation of damages but do not appear to affect the interpretation of the contract terms.

■ Likewise, the individual differences in the purchases made by each class member will not affect the examination of the conversion claim. Under Arizona law, conversion is defined as: "An intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Focal Point, Inc. v. U–Haul Co. of Arizona, Inc.*, 155 Ariz. 318, 746 P.2d 488, 489 (1986). The minor differences in purchase transactions do not override the common questions related to the analysis of the conversion elements.

Defendant WFS argues that it has valid defenses which require individual proof and which predominate over the common issues. Specifically, WFS contends that to recover against an assignee, a plaintiff must prove that it is entitled to rescission of the contract or that it received substantially no value in the transaction. The applicability of this defense, however, is a common issue appropriate for consideration on a class-wide basis. WFS also asserts that the statute of limitations must be applied individually. However, the Plaintiffs argue that application of the "discovery rule" [2] will prevent the statute of limitations from barring any of the class member's claims because none of the class members could have discovered the alleged fraud before the filing of the present suit. The interpretation of the discovery rule's application to the present case is a common legal issue, and a finding in the Plaintiffs' favor would dispose of the need for individual assessments.

 The Defendants further contend and the court agrees that any determination regarding damages will require an individual examination of the contracts. However, differences in the amount of damages alone will not defeat class certification. *See Blackie,* 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *Brink,* 185 F.R.D. at 572 (finding that common issues predominate when "the only individualized inquiry pertains to the calculation of damages"); *Haley,* 169 F.R.D. at 651 ("As for the issue of damages, it seems clear that the fact that plaintiffs will be entitled to different damages does not mean that common questions do not predominate."). In the present case, the court finds that the numerous significant common questions predominate over the individual inquiries.

### F. Superiority of Class Action

 Finally, to qualify as a(b)(3) class action, the plaintiff must prove that "a class action is superior to other available methods

for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The United States Court of Appeals for the Ninth Circuit has provided the following guidance regarding the superiority requirement:

> In determining superiority, courts must consider the four factors of Rule 23(b)(3). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."

*Zinser,* 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 562 (2d ed.1986)). In the present case, examination of the four subfactors under Rule 23(b)(3) persuade the court that class action treatment is appropriate.

#### 1. Rule 23(b)(3)(A)

The first inquiry focuses on the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser,* 253 F.3d at 1190. Here, the Plaintiffs' claims are based on alleged overcharges for official fees and illegal roll backs coupled with false disclosures. The claims based on the alleged overcharge for official fees is clearly minimal and based on the evidence provided to the court, range from $6.83 to $433.00.

The amount of damages available for a violation of the Odometer Act is dictated by statute at "3 times the actual damages or $1,500, whichever is greater." 49 U.S.C. § 32710(a) (1994). In addition, the Odometer Act provides for an award of "costs and a reasonable attorney's fee to the person when a judgment is entered for that person." *Id.* § 32710(b). The Plaintiffs do not present an exact amount of the potential recovery for each class member but argue that "[i]t is apparent that the instant action is one in

---

**2.** Pursuant to the discovery rule, "a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause."

*Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,* 182 Ariz. 586, 898 P.2d 964, 966 (1995).

which the average recovery would be relatively modest." The amount of damages available for a customer who bought a used car with more mileage than expected does not appear sufficiently significant to create a substantial interest in each class member to prosecute separate actions. Although there may be a range of potential recovery within the class, the stakes do not appear to be so high or the disparities between class members so great that a substantial interest in individual control would develop.

### 2. Rule 23(b)(3)(B)

The second subfactor requires consideration of "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed.R.Civ.P. 23(b)(3)(B). The *Zinser* court adopted the following reasoning to explain the purpose behind this requirement:

> This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits. . . . Moreover, the existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action.

*Zinser*, 253 F.3d at 1191 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1780 at 568–70 (2d ed.1986)). In the present case, neither the Plaintiffs nor the Defendants have identified other pending lawsuits related to the controversy at issue. Thus, this subfactor weighs in favor of class certification because there appears to be no risk of multiple adjudications and no indication that absent class members would prefer individual actions.

### 3. Rule 23(b)(3)(C)

A third consideration in determining whether a class action is superior is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(C). In the present case, every member of the proposed class purchased a used vehicle from Neon Motors in Scottsdale, Arizona. The relevant witnesses and evidence are likely located in close proximity to the location of Neon Motors. Furthermore, Arizona law applies to the state law claims asserted by the Plaintiffs. The District of Arizona is a desirable forum for hearing the present actions, and therefore, this third subfactor supports the certification of a class action.

### 4. Rule 23(b)(3)(D)

The fourth inquiry centers on examination of "the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(D). "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192. In the present case, the common issues regarding liability outweigh the complexities of determining damages for individual plaintiffs. Although a determination of damages must be conducted on an individual level, the development of a formula for the computation of damages may be suitable in this case and may ease any complexity involved in determining individual damages. The workable size of the proposed class and the limited number of individual questions do not pose manageability problems that weigh against class certification.

Because the (b)(3) subfactors support class action treatment and because numerous common issues at the heart of the controversy bind the class members together, the court finds that a class action would be superior to other forms of resolving this dispute. A class action in the present case would provide the most efficient mechanism for disposing of the Plaintiffs' Odometer Act, breach of contract, and conversion claims against the Defendants.

IT IS ORDERED granting the Plaintiffs' Motion for Class Certification of Class A, Class B, Subclass A, and Subclass B, asserting claims against Defendants Neon Motors, Donn W. Mueller, Tricia Mueller, and WFS. (Doc. 82).

IT IS FURTHER ORDERED denying the Plaintiffs request for an evidentiary hearing to lay the foundation for the exhibits and

evidence provided to the court in connection
with the Motion to Certify. (Doc. 103–1).